# EXHIBIT A

# H-2A APPLICATION FILED ON DECEMBER 11, 2015



**másH2A**

Capable, Reliable, Legal Labor
for Independent Growers

December 11, 2015

U.S. Department of Labor, Employment & Training Administration
Office of Foreign Labor Certification
Chicago National Processing Center
11 West Quincy Court
Chicago, IL 60604-2105

              RE:     H-2A Application for Temporary Employment Certification
                      Pepperco-USA Inc.
                      State Job Order #:  6410080

Dear Certifying Officer:

Enclosed is one original ETA Form 9142, Application for Temporary Employment Certification, as well as all related attachments required for participation in the H-2A temporary non-immigrant visa program for Pepperco-USA Inc. of Coldwater, MI.

Pepperco-USA Inc. does not believe sufficient local workers exist to meet its labor needs in the upcoming season. Pepperco-USA Inc. will hire any qualified local or domestic labor that is available, able and willing to perform the job duties set forth in the attached H-2A application.

While Pepperco-USA previously filed labor certification applications with both Michigan Workforce Development Agency and the U.S. Department of Labor which were ultimately rejected, we direct your attention to the accompanying letters which we believe address in large parts the previous reasons for the Office of Foreign Labor Certification's objections to the company's application:

1.  The Department appeared to believe that Pepperco-USA's growing season was not 'predictable.' Pepperco-USA has been in a start up mode for the past two years and produced only a partial crop in 2015 due to severe labor shortages. The dates of need sought in this application, February 1, 2016 to November 30, 2016, will be the standard production season for the company. The letter from the Michigan Department of Agriculture and Rural Development illustrate the deficit of labor to meet the company's annual production needs.
2.  DOL denials relied in part on the assumption that Pepperco-USA and Maroa Farms, another subsidiary company of the parent Mastronardi Produce--USA, were similarly engaged in vegetable production and could thus 'share workers' on a year-round basis. Maroa Farms produces tomatoes in greenhouses from August through June each year. It never produces peppers, nor does Pepperco ever grow tomatoes. The attached letter from Dr. Sanaullah Sardar, professional greenhouse crop consultant, clearly outlines the impossibility of 'sharing' labor between tomato and peppers being grown in hothouse conditions due to plant health considerations.
3.  DOL denial was premised in part on the Department's assumption that, since both Maroa and Pepperco were subsidiaries of the parent company, Mastronardi Produce USA, they could be able to share labor. Further, notwithstanding that all indicia indicated that the two companies are separate legal entities (different FEINs, physical locations, different crop activities, separate labor needs and others) the Department decided that the companies' different production seasons constituted a year-round labor need. In addition to the issues raised by Dr. Sardar which explains that labor cannot be

**MAS Labor H2A, LLC**
650 Front Street • P.O. Box 507 • Lovingston, VA 22949
434.263.4300 • 434.263.4700 fax
www.maslabor.com • H2A@maslabor.com

shared for numerous reasons, attached is a letter from U.S. Senator Carl Levin which clearly refutes the Department's conclusion that the "combined needs of Pepperco and Maroa Farms are in actuality a single need" of the parent corporation. Senator Levin further points out that there is no rational or evidentiary reason to combine the employees of these two separate and distinct farming corporations.

Pepperco-USA Inc. has demonstrated by experiencing severe labor shortages in 2015 that it is unlikely to be able to locate and hire sufficient local workers in 2016. The attached photos show a healthy pepper crop compared to the devastated 2015 Pepperco pepper crop, because of the inability to hire the needed local workers.

Pepperco-USA Inc. will hire any qualified local or domestic labor that is available, able and willing to perform the job duties set forth in the attached H-2A application.

In accordance with procedures set forth at 20 CFR 654.403, Pepperco-USA Inc. hereby requests conditional access to the intrastate and interstate clearance system. If one has not already been performed at the time of this filing, Pepperco-USA Inc. also hereby requests a timely inspection of worker housing by representatives of the State Workforce Agency, the State Health Department and/or the US Employment and Training Administration to verify the condition of such housing. H-2A program requirements stipulate that all worker housing must meet standards not later than 30 days prior to occupancy.

We appreciate the Department's prompt attention to this application. Thank you for your consideration.

Sincerely,

Elizabeth D. Whitley
President

Enclosures

cc:  Christopher J. Gill, Pepperco-USA Inc.



**STATE OF MICHIGAN**

RICK SNYDER
GOVERNOR

# DEPARTMENT OF AGRICULTURE
# AND RURAL DEVELOPMENT

JAMIE CLOVER ADAMS
DIRECTOR

October 22, 2015

To Whom It May Concern:

I am writing this letter in support of Pepperco-USA, Inc., located in Coldwater, Michigan as the Director of the Michigan Department of Agriculture and Rural Development. It is our mission to grow Michigan's food and agriculture industry which has now reached over $100 billion in annual economic impact. This growth trajectory is impressive and is indicative of an opportunity for more sustainable industry growth. Michigan's economy benefits from the strength and diversity of our food and agriculture sector. That strength and diversity is rooted in Michigan's soils, climate, and farm families.

Michigan farmers have come to rely on a migrant workforce in order to succeed. The need for migrant workers is due to the shortfall of farm labor in the State of Michigan. The skill, speed, and stamina of a migrant workforce are also key to the success of the Michigan farms.

Despite all its efforts to obtain local farm labor for its 2015 growing season, Pepperco struggled to meet its farm labor needs during its first year in operation. As a result of its inability to meet its labor needs, Pepperco's crops suffered greatly and the company had significant loss in its first season. Pepperco is a cooperative industry partner, as well as good corporate citizens of the Coldwater community. To that extent, the Michigan Department of Agriculture and Rural Development is supportive of Pepperco's efforts to engage in the H2A program and it supports the request for an H2A workforce.

Your consideration is appreciated. If you have any questions, please feel free to contact me at 517-284-5716.

Regards,

Jamie Clover Adams
Director

CONSTITUTION HALL • P.O. BOX 30017 • LANSING, MICHIGAN 48909
www.michigan.gov/mdard • (800) 292-3939

From:
Dr. M. Sanaullah Sardar
[PhD Plant Physiology]
Greenhouse Crop Consultant
4488-Helsinki Cres.
Windsor/Ontario
Cell: 519-987-4050

To:
Christopher Gill
Pepperco-USA, Inc.
220 N. Fillmore Rd.
Coldwater, MI 49036

Dated: October 05, 2015

TO WHOM IT MAY CONCERN:

This letter is intended to highlight the importance of using and maintaining segregated labour crew at Maroa Farms-USA, Inc. ("Maroa Farms") and Pepperco-USA, Inc. ("Pepperco") greenhouse facilities to prevent pathogenic transmission through cross contamination. Maroa Farms has planned to grow 5 just under 60 acres of tomatoes at Maroa Farms located at 270 N. Fillmore Road, Coldwater, Michigan and Pepperco is scheduled to grow approximately 41 acres of peppers at Pepperco's greenhouses at 220 N. Fillmore Road, in Coldwater, Michigan for the forthcoming seasons. Both. tomato [*Lycopersicon esculentum L.*] and pepper [*Capsicum annum L.*] crops belong to the same family Solanaceae and have several common diseases with the same causal organism and epidemiology. There are high chances that use of the same labor crew at both locations will mechanically transmit bacterial, viral and fungal disease infections from one facility to another and may cause colossal yield loss each year in both crops. As a result, and for the reasons set forth in this opinion letter, I do not recommend that labor crews be shared between the two companies.

- Restricted use of the workers is one of the basic sanitation measures necessary in hydroponic greenhouses to keep the crop free from disease and pathogens. Worker's clothing, shoes, hands and tools are potential contamination source to mechanically transmit disease from one greenhouse to another.
- There are several common diseases in tomatoes and peppers and can be transmitted mechanically by using the same working crew in different greenhouses. These include:

  o **Tobacco mosaic virus (TMV)**
    TMV may infect both greenhouse pepper and tomatoes seriously. Viral infections can reduce plant vigor by disrupting cellular functioning, but do not commonly kill plants. Tobacco mosaic is one of the most highly persistent tomato and pepper diseases because it can remain viable without a host for many years and it is able to withstand high heat. The virus is spread primarily by mechanical methods.The symptoms of infection first appear on the leaf as a necrosis along the main veins accompanied by wilting and leaf drop (Howard et al 1994, Portree 1996). New growth on the plants may exhibit mosaic symptoms as well as distorted growth (Howard et al 1994, Portree 1996. Mature plants can be symptomless carriers of the virus and escape detection later in the season (Portree 1996).

  o **Tomato spotted wilt virus (TSWV)**
    Tomato spotted wilt virus has a wide host range, affecting approximately 300 species in 34 families of plants (Howard et al 1994). The virus is spread primarily by thrips, particularly the western flower thrips (Frankliniella occidentalis), and will only become a significant problem in greenhouse pepper and tomato crops if the thrips vector is present (Howard et al 1994). Symptoms of infection on the leaves include blackish-brown circular spots, or tan spots bordered by a black

margin (Howard et al 1994). Symptoms on ripening fruit are quite dramatic with orange to yellow spots surrounded by a green margin. or green spots on a background of the ripe fruit color of red, yellow or orange. Control of this virus is obtained by controlling the thrips vector. Thrips biocontrol programs should be initiated at the beginning of the season. Weeds should be kept under strict control as they can serve to harbour both the thrips vector and the virus. Maintaining a 6 meter weed-free buffer zone around the greenhouse will help prevent the introduction of thrips into the greenhouse, as well as preventing the establishment of virus infected weed plants around the greenhouse which could serve as a source of the virus.

o  **Tomato mosaic virus (TmMV)**
   Tomato mosaic virus may infect greenhouse pepper and causes symptoms very similar to those caused by tobacco mosaic virus (Howard et al 1994). Virus can spread mechanically through workers. Control measures are the same as for tobacco mosaic virus.

o  **Bemisia transmitted Gemini virus (as yet unidentified).** This can be a severe virus in tomatoes and peppers growing in United States and in Mexico. The symptoms are often similar to tomato yellow leaf curl virus and the fruit can exhibit off-colored ripening. Again, the best control of this disease is to control the whitefly which spreads it.

o  **Bacterial canker (*Clavibacter michiganensis*):** The disease infest both pepper and tomatoes and can be transmitted mechanically. The disease is first noticed on the lower leaves. which exhibit unilateral wilting on one side of the leaf, then wither and die. Often. the petioles remain on the plant, which helps distinguish bacterial canker from other diseases. Fruit may be affected with small, mised white spots that develop brown centers. Moderate temperatures and high humidity favor disease development. No cure, but spread of the disease can be controlled by isolating the workers and sterilizing all equipment and media.

o  **Bacterial spot (*Xanthomonas vesicatoria*):** First symptoms: small, dark, water-soaked spots on leaves, progressing to dried. cracked lesions surrounded by yellow. Spreads rapidly via wounds, such as pruning or sucking insects. Warm, moist temperatures favor the disease. Copper sprays can provide some control. Destroy all plant residues.

o  **Bacterial wilt (*Burkholderia solanacerum*, also called *Pseudomonas solanacearum* and *Ralstonia solanacearum*):** Symptoms, both in tomatoes and peppers begin as wilting of lower leaves, followed by whole plant, without characteristic yellowing caused by other diseases. A quick diagnosis: place a freshly cut infected stem in a glass of water, and a white, milky stream of bacterial ooze will be visible flowing from the cut. Highly contagious. this disease can cause serious damage. No effective controls known.

o  **Fusarium Wilt (*Fusarium oxysporum f. sp. lycopersici*):** Solanaceous crop plants (tomato, potato, pepper, and egg- plant) may be affected at any age by the fungi that cause Fusarium wilt and Verticillium wilt. The wilt organisms usually enter the plant through young roots and then grow into and up the water conducting vessels of the roots and stem. As the vessels are plugged and collapse. the water supply to the leaves is blocked. With a limited water supply. leaves begin to wilt on sunny days and recover at night. Wilting may first appear in the top of the plant or in the lower leaves. The process may continue until the entire plant is wilted, stunted, or dead. Tomato and potato plants may recover somewhat but are usually weak, unthrifty, and produce fruit of low quality. Peppers typically collapse rapidly and die. Fusarium and Verticillium wilts are rarely significant in field grown tomatoes due to the widespread incorporation in tomato cultivars of genes for resistance to the pathogen.

o  **Pythium root rot and wilt (Pythium spp.)**
   Pythium root rot and wilt can affect tomato & pepper plants at any age. Pythium is a very common genus of fungi that are classed as water molds. For practical purposes it is wise to consider that Pythium is always present in the greenhouse at some level. As with most diseases, the presence of the pathogen does not guarantee that the disease will develop. Pythium takes advantage of plants under stress and this is especially true for tomato plants. Avoiding problems with Pythium through maintaining healthy plants in optimum growing environment is the best way to deal with Pythium. Pythium attacks the roots of the pepper & tomato plant and concentrates on the small feeder roots (Portree 1996). In situations where Pythium infected tomato plants have been examined. the bulk of the roots can remain clean and white, suggesting a healthy root system. When sections of these roots are examined in the laboratory they often reveal only very low levels of Pythium. levels far below what would be expected if Pythium was a problem. The feeder roots where Pythium is

causing the problem are often too small to work with or overlooked in the examination of the roots of Pythium wilted tomato plants.

Having a wide range of common disease and pest problems in tomatoes and peppers, there is high risk of using same working force to get cross contamination from tomatoes to pepper crop plantation and vice versa. As one of the most efficacious Integrated Pest Management (IPM) strategies I would strongly recommend Mastronardi Produce Co Ltd is to use separate working crew to restrict the pathogens proliferation from one facility to another. Based upon the total growing area and to manage *'Physio-Morpho-Agronomic & Pathological crop Manipulations'* at Maroa Farms and Pepperco Greenhouses, Mastronardi Produce Co Ltd may require the following trained migrant workers as below.

1. **Maroa Farms**, [270 N. Fillmore Road, Coldwater, Michigan ]: Total growing area: just under 60 Acres
   SUGGESTED TOTAL TRAINED MIGRANT WORKERS Maroa Farms:  92 [1.75 workers per acre]
   The facilities are bifurcated into Phase 1 & 2 to grown clusters, beefsteak and speciality tomatoes as

   **Phase 1: Total Growing Area: 104, 916 m²**

   - Cluster tomatoes *"Lycopersicon esculentum cv. Komeett"* transplantation:          52,458 m²
   - Cluster tomatoes *"Lycopersicon esculentum cv. Merlice"* transplantation:          52,458 m²

   **Phase 2: Total Growing Area: 108,293 m²**

   - Beefsteak tomatoes *"Lycopersicon esculentum cv. Torero"* transplantation:          46,531 m²
   - Beefsteak tomatoes *"Lycopersicon esculentum cv. Fronti"* transplantation:          9,462 m²
   - Speciality Tomatoes *"Lycopersicon esculentum cv. Piccolo"* transplantation:          42,517 m²
   - Strawberries / mini cucumbers:          9,783 m²
   - Balance Trial Varieties

2. **Pepperco Greenhouses**, [220 N. Fillmore Road, Coldwater, Michigan]: Total growing area: 41 Acres

   **SUGGESTED TRAINED MIGRANT WORKERS Pepperco Greenhouses:**  60

If there are any questions or concerns pertaining to this matter. I would be willing to discuss.

Sincerely,

Dr. M. Sanaullah Sardar
[PhD Plant Physiology]
Greenhouse Crop Consultant

# CURRICULUM VITAE

**Dr. M. Sanaullah Sardar**
(PhD Plant Physiology)
4488-Helsinki Cres.
Windsor/ON
N8G 0A6
Ph: 519-987-4050
E-mail: *sana_leamington@hotmail.com*

---

## PROFESSINAL PROFILE

❖ **2003-Present: Horticultural Crop Consultant**
   13 years experience as a "Greenhouse Crop Consultant" to advise the greenhouse growers about innovative growing strategies and crop management in *Sweet Peppers, Tomatoes, Cucumbers and Egg Plants in* North, Central & South America.

❖ **2007- 2010: Technical Advisor**
   Three years work as "Technical Adviser" with Monsanto Vegetable Seeds to promote the new cultivars of hydroponic tomatoes, cucumbers and sweet peppers suitable to grow under controlled environmental conditions in high-tech. greenhouses in Canada, USA and Mexico and South America.

❖ **2001-2007: Senior Greenhouse Grower/Agronomist**
   Seven years practical growing experience as "Senior Grower/Agronomist" to manage and grow hydroponic crops (tomatoes, peppers and cucumbers) at AMCO Farms Inc. Leamington/ON.

❖ **1991-2000: Post Graduate Research Fellow**
   Ten years research experience in various academic institutions i.e. University of Hamburg, Germany; Quaid-I-Azam University, Islamabad, Pakistan; Agriculture University, Faisalabad, Pakistan. Research work was conducted at Post-graduate level on various crops like *Gossypium hirsutum L.; Lathyrus stivus L; Triticum aestivum; Hordeum vulgare etc.*

❖ **1984-1988: Area Manager**
   Four years work experience as "Area Manager" in collaboration with 'Cynnamid (USA) and Jaffer Brothers (Pvt.) Ltd. to develop post and pre-emergence herbicides/pesticides in cotton, wheat, rice and sugarcane in South East Asia.

## EXPERIENCE AND SKILLS

❖ Leading skills to command and control the greenhouse indoor climate [PRIVA SYSTEM; HOOGENDORN & ARGUS] to maintain optimal indoor temperatures, relative humidity, VPD. Sound judgment to implement the 24 h temperature regimes in the facility in commensuration with crop condition at different phases of plant growth and development pattern.

❖ Strong knowledge about the "Plant pathology/Plant protection" based upon the concept of "Integrated Pest Management" especially under controlled environmental conditions. In addition, updated knowledge of

potential utilization and awareness of "Fertigation System" to manage all the micro and macro-nutrients in the irrigation water.

❖ Apart from growing tomatoes, peppers and cucumbers, extensive experience on initial trial screening program of new genotypes of tomatoes and sweet peppers [Breeder's material] for various seeds companies currently operating in North American greenhouse industry.

❖ Compilation of extensive research reports, based upon the morpho/physio/agronomic traits of the particular cultivars to agronomically develop in NAFTA in low tech., mid tech and ultra high tech hydroponic poly and glass greenhouse operations.

❖ Hard working, honest, dedicated and committed for the uplift of agriculture sector

## EDUCATIONAL BACKGROUND

| | |
|---|---|
| 1997-2001 | **Doctoral degree [PhD] Plant Physiology:** On DAAD Fellowship/Collaboration between University of Hamburg; Germany and Quaid-I-Azam University Islamabad; Pakistan |
| 1991-1995 | **M.Phil. Phytohormones/ Plant Physiology:** Three year advance post graduate research degree at Quaid-I-Azam University, Islamabad, Pakistan. |
| 1988-1990 | **M.Sc. degree in Plant Sciences:** University of Agriculture: Faisalabad, Pakistan |

## AWARD AND FELLOWSHIPS

1:  DAAD Fellowship to accomplish PhD program Hamburg University, Germany.
2:  Award and merit scholarship in M.Phil to complete 3 years advance research in Plant Physiology (*Phytohormones*) at Quaid-I-Azam University Islamabad; Pakistan.
3:  Global Challenge Award (Man-Of-Year) in Monsanto during 2008

## RESEARCH PUBLICATIONS

1: Pak. J. Bot., 27(1): 139-141, 1995.
Effects of plant growth regulators on neurotoxin content in leaves of *Lathyrus sativus (L.)*
A. Bano and M. Sanaullah
*Department of Biological Sciences, Quaid-I-Azam University, Islamabad; Pakistan.*

2: Pak. J. Bio. Sci. 2(4) 1375-1377, 1999
Effects of Spermine and Abscisic Acid on growth and biochemical contents of *Vigna mungo (L.)* under high temperature & salt stress.
Naveed Anjum, A. Bano and M. Sanaullah
*Department of Biological Sciences, Quaid-I-Azam University, Islamabad; Pakistan.*

3: Bangladesh J. Bot. 28 (2): 139-144, 1999
Effects of plant growth regulators on the accumulation of neurotoxin (BOAA) and yield of *Lathyrus sativus (L.)*
M. Sanaullah and A. Bano.
*NARC, Islamabad & Department of Biological Sciences, Quaid-I-Azam University, Islamabad; Pakistan.*

4: Paper presented in 8th National Meeting of Plant Scientists. Held at University of Karachi, Botany Department, February 24- 28, September, 2003.
Physiological characterization for salt tolerance in barley (*Hordeum vulgare L.*) and wheat (*Triticum aestivum L.*)
**M. Sanaullah and A. Bano and K. Doerffling**
*Institut fur Allgemeine Botanik and Botanisher Garten, Universitat Hamburg, Germany*

5: International Conference on Soils and Ground Water Salinization in Arid Regions.pp.129; 2010
Physiological Characterization for Salt Tolerance in Wheat (*Triticum aestivum* L.)
**A. Bano, M. Sanaullah and K. Doerffling**
*Institut fur Allgemeine Botanik and Botanisher Garten, Universitat Hamburg, Germany*

## SCREENING/AGRONOMIC DEVELOPMENT OF HYDROPONIC CULTIVARS

1: Evaluation report on six cultivars of greenhouse beefsteak tomatoes, 'Big Dena, Grow Dena & Macarena' from Syngenta Seeds Inc., 2005
*AMCO Farms Inc. Leamington; Ontario*

2: Developing agronomic protocol of greenhouse cluster tomato, Claramon (*Lycopersicon esculentum cv. Claramon*), 2005
*Cappola Farms & AMCO Farms Inc. Leamington; Ontario*

3: Initial screening of three hydroponic bell peppers (Fascinato, Tenato & Rubato) from Syngenta Seeds Inc. 2006
*AMCO Farms Inc. Leamington; Ontario*

4: Performance assessment of Western Seed's greenhouse tomatoes (*Lycopersicon esculentum L.*) in Southern Canada, 2006
*Cappola Farms & AMCO Farms Inc. Leamington; Ontario*

5: Morpho-physio-agronomic development of cluster tomato variety *Lycopersican esculentum cv. Komeett* in NAFTA as Technical Advisor in MONSANTO-2007

6: Agronomic development of Red Pepper variety *Capsicum annum cv. Morriane* in NAFTA as Technical Advisor in MONSANTO-2007

7: Morpho-physio-agronomic development of beefsteak tomato variety *Lycopersican esculentum cv. Torero* in NAFTA as Technical Advisor in MONSANTO-2009

**Dr. M. Sanaullah Sardar**
**[PhD Plant Physiology]**
**Greenhouse Crop Consultant**

# HONIGMAN

Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors

Senator Carl M. Levin

(313) 465-7720
Fax: (313) 465-7721
clevin@honigman.com

October 21, 2015

Thomas E. Perez
United States Secretary of Labor
United States Department of Labor
Frances Perkins Building
200 Constitution Ave. NW
Washington, DC 20210

Via Federal Express

*Re: Pepperco-USA, Inc.*

Dear Mr. Secretary:

I recently retired from the U.S. Senate after representing Michigan for 36 years. That experience taught me a powerful lesson about agriculture; a large part of the Michigan economy is based on agriculture and the agricultural sector is highly dependent on seasonal, temporary labor from other countries.

Indeed, while I favored comprehensive immigration reform because of the need to bring millions of responsible people-who have worked hard, contributed to their communities, and raised families-out of the shadows and on a path to citizenship, I also favored provisions normalizing guest worker programs for those who pick our crops and perform other functions, where there is a shortage of citizens available to do so.

Now, having recently returned to the private practice of law, I find a client of my firm caught in a bizarre bureaucratic maze, created by the Department of Labor's Office of Foreign Labor Certification (OFLC). I also became something of an expert on bureaucratic mazes during those 36 years in the Senate!!

Our client (Mastronardi Produce – USA, Inc.) is the parent company of Maroa Farms, Inc. (which grows greenhouse tomatoes in southern Michigan) and Pepperco-USA, Inc., which grows peppers in a cluster of nearby greenhouses. Maroa Farms has been in business for years and has been certified for years in the H-2A program. Pepperco submitted for its first Application for Temporary Employment Certification ("Application") in December 2014. That Application was denied in January 2015 by the Certifying Officer and the denial was affirmed on February 23, 2015, in ETA Case No. H-300-14357-603369 (the "Case").

A joint application for both companies was filed for H-2A status in July 2015. This was done even though in the Case, the ALJ found that the two companies manufacture different products that require separately skilled workers who:

2290 First National Building · 660 Woodward Avenue · Detroit, Michigan 48226-3506
*Detroit · Ann Arbor · Bloomfield Hills · Chicago · Kalamazoo · Lansing*

19456348.4

# HONIGMAN

"grow different crops, with different requirements necessitating different skills from the fully-trained workers. They operate separate greenhouses with separate utilities. Those who work at Maroa Farms cannot work at Pepperco, both because of the need to prevent the spread of plant disease/contamination and because it would be illegal to share employees under separate temporary labor certifications." (Emphasis added).

Also, the joint application was denied even though in the appeal of the Case to the Board of Alien Labor Certification Appeals (BALCA), while denying the appeal Judge Johnson found that if the joint application was considered separately, H2A certification would have been granted:

"the parties do not dispute that if Maroa Farms and Pepperco had separate owners but operated in the same way they do (or will, once Pepperco starts operating) they would have separate temporary needs" and that "if Pepperco's application could have been considered separately from Maroa Farm's application there is little doubt that it would have been certified."

The tomatoes and peppers have overlapping but different growing seasons. If the growing seasons were combined, the seasons would last a year, and if combined, would disqualify Pepperco's need as being temporary. But there is no rational justification for combining them. Common ownership of two companies is no reason to combine the work periods of separate operations with separate groups of employees. The tomato workers cannot work with peppers and vice versa because, as the unrefuted testimony during the hearing established, and as the ALJ found, Maroa Farms and Pepperco have a mutually exclusive workforce that,

"grow different crops, with different requirements necessitating different skills from the fully-trained workers. They operate separate greenhouses with separate utilities. Those who work at Maroa Farms cannot work at Pepperco, both because of the need to prevent the spread of plant disease/contamination and because it would be illegal to share employees under separate temporary labor certifications."

## So why was the application denied in the Case?

The ALJ's decision is based on his statement that because they are owned, managed and controlled by Mastronardi Produce USA, the "combined needs of Pepperco and Maroa Farms are in actuality a single need of Mastronardi." By definition, if you decide to combine something they become combined, i.e., single. If employees at adjacent Chevy and Buick plants all work eight hours a day, it does not mean that some GM employees (they all are GM employees) work sixteen hours a day!

# HONIGMAN

Thomas E. Perez
October 21, 2015
Page 3

The pertinent and determining facts in this matter should address the issue – *are the employees of each of these operations separate and therefor are the employees seasonal and/or temporary*. Again, these facts were determined by the ALJ, who clearly himself found that Maroa Farms and Pepperco have a separately trained and skilled workforce. It is uncontested that Maroa Farms employees do not work at Pepperco, in part because of training and skill applicable to the vastly different crops and the "need to prevent the spread of plant disease/contamination." There is no contrary evidence. There is no rational or factual or evidentiary reason to combine these employees for H2A purposes.

Mastronardi had to get its tomatoes harvested. Otherwise its major tomato crop would be threatened (100 acres of greenhouses with 1 million tomato plants). So it notified the Certifying Officer on July 21, 2015 that Maroa Farms was removing Pepperco from the joint application, while preserving the prior argument of Pepperco regarding its distinct temporary and seasonal needs. Maroa's application was granted. Pepperco's separate application will be filed in the next two months.

An important employer in West Michigan has been harmed by circular reasoning. The Department of Labor should act to remedy this approach. I am sending a copy of this letter to the Office of Foreign Labor Certification and request that it be made part of the public file in this matter. A copy of this letter also will be included in the upcoming Application filed by Pepperco for the 2016 growing season.

Thank you.

Very truly yours,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Senator (Retired) Carl M. Levin

cc:    Employment and Training Administration
(Office of Foreign Labor Certification)

2290 First National Building · 660 Woodward Avenue · Detroit, Michigan 48226-3506
*Detroit · Ann Arbor · Bloomfield Hills · Chicago · Kalamazoo · Lansing*

19456348.4

Pepperco Crop:

- Broken heads stopping the growth of plants
- Rotting fruit all over the ground
- Plants out of fruit balance – Fruit stacking together
- Overgrown and can't even see the end wall of the greenhouse – wasted nutrients and sugars
- Fruit rotting on the plants













Photos from a different facility of what an in balance Pepper crop should look like:







OMB Approval: 1205-0466
Expiration Date: 03/31/2016

**H-2A Application for Temporary Employment Certification**
**ETA Form 9142A**
**U.S. Department of Labor**



*Please read and review the filing instructions carefully before completing the ETA Form 9142A . A copy of the instructions can be found at http://www.foreignlaborcert.doleta.gov/. In accordance with Federal Regulations, incomplete or obviously inaccurate applications will not be certified by the Department of Labor. If submitting this form non-electronically, ALL required fields/items containing an asterisk ( * ) must be completed as well as any fields/items where a response is conditional as indicated by the section ( § ) symbol.*

## A. Employment-Based Nonimmigrant Visa Information

| 1. Indicate the type of visa classification supported by this application *(Write classification symbol).* * | H-2A |
|---|---|

## B. Temporary Need Information

| 1. Job Title * Farmworker | | |
|---|---|---|
| 2. SOC (ONET/OES) code * <br> 45-2092 | 3. SOC (ONET/OES) occupation title * <br> Farmworkers and Laborers, Crop, Nursery, and Greenhouse | |

| 4. Is this a full-time position? * <br> ☑ Yes ☐ No | Period of Intended Employment | |
|---|---|---|
| | 5. Begin Date * 02/01/2016 <br> *(mm/dd/yyyy)* | 6. End Date * 11/30/2016 <br> *(mm/dd/yyyy)* |

**7. Worker positions needed/basis for the visa classification supported by this application**

| 60 | **Total Worker Positions Being Requested for Certification *** |
|---|---|

Basis for the visa classification supported by this application
*(indicate the total workers in each applicable category based on the total workers identified above)*

| 60 | a. New employment * | 0 | d. New concurrent employment * |
|---|---|---|---|
| 0 | b. Continuation of previously approved employment * without change with the same employer | 0 | e. Change in employer * |
| 0 | c. Change in previously approved employment * | 0 | f. Amended petition * |

**8. Nature of Temporary Need** (Choose only one of the standards) *
☑ Seasonal ☐ Peakload ☐ One-Time Occurrence ☐ Intermittent or Other Temporary Need

**9. Statement of Temporary Need ***

Agricultural employer seeks approval to hire foreign non-immigrant workers to perform seasonal agricultural work which is dependent on weather and growing seasons. Workers are not required in months outside the requested dates of need as there is no seasonal agricultural work to be performed. Employer anticipates an insufficiency of qualified U.S. workers to meet these seasonal labor needs.

---

ETA Form 9142A

**FOR DEPARTMENT OF LABOR USE ONLY**

Page 1 of 7

Case Number: H-300-15345-231422        Case Status: IN PROCESS        Validity Period: N/A        to N/A

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

H-2A Application for Temporary Employment Certification
ETA Form 9142A
U.S. Department of Labor



## C. Employer Information

**Important Note:** Enter the full name of the individual employer, partnership, or corporation and all other required information in this section. For joint employer or master applications filed on behalf of more than one employer under the H-2A program, identify the main or primary employer in the section below and then submit a separate attachment that identifies each employer, by name, mailing address, and total worker positions needed, under the application.

| | |
|---|---|
| 1. Legal business name *<br>Pepperco-USA Inc. | |
| 2. Trade name/Doing Business As (DBA), if applicable<br>N/A | |
| 3. Address 1 *<br>220 N. Fillmore Rd | |
| 4. Address 2<br>mailing: 220 N. Fillmore Rd. , Coldwater MI 49036 | |

| 5. City *<br>Coldwater | 6. State *<br>MI | 7. Postal code *<br>49036 |
|---|---|---|
| 8. Country *<br>UNITED STATES OF AMERICA | 9. Province<br>N/A | |
| 10. Telephone number *<br>517-278-0320 | 11. Extension<br>N/A | |
| 12. Federal Employer Identification Number (FEIN from IRS) *<br>465545928 | 13. NAICS code (must be at least 4-digits) *<br>11141 | |
| 14. Number of non-family full-time equivalent employees<br>80 | 15. Annual gross revenue<br>N/A | 16. Year established<br>2014 |

**17. Type of employer application (choose only one box below) ***

☑ Individual Employer
☐ H-2A Labor Contractor or Job Contractor

☐ Association – Sole Employer (H-2A only)
☐ Association – Joint Employer (H-2A only)
☐ Association – Filing as Agent (H-2A only)

## D. Employer Point of Contact Information

**Important Note:** The information contained in this Section must be that of an employee of the employer who is authorized to act on behalf of the employer in labor certification matters. The information in this Section must be different from the agent or attorney information listed in Section E, unless the attorney is an employee of the employer. For joint employer or master applications filed on behalf of more than one employer under the H-2A program, enter only the contact information for the main or primary employer (e.g., contact for an association filing as joint employer) under the application.

| 1. Contact's last (family) name *<br>Gill | 2. First (given) name *<br>Christopher | 3. Middle name(s) *<br>J. |
|---|---|---|
| 4. Contact's job title *<br>Director of Greenhouse Operations | | |
| 5. Address 1 *<br>220 N. Fillmore Rd. | | |
| 6. Address 2<br>mailing: 220 N. Fillmore Rd. , Coldwater MI 49036 | | |

| 7. City *<br>Coldwater | 8. State *<br>MI | 9. Postal code *<br>49036 |
|---|---|---|
| 10. Country *<br>UNITED STATES OF AMERICA | 11. Province<br>N/A | |

| 12. Telephone number *<br>517-278-0320 | 13. Extension<br>N/A | 14. E-Mail address<br>N/A |
|---|---|---|

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

H-2A Application for Temporary Employment Certification
ETA Form 9142A
U.S. Department of Labor



## E.  Attorney or Agent Information (if applicable)

| 1. Is/are the employer(s) represented by an attorney or agent in the filing of this application (including associations acting as agent under the H-2A program)? If "Yes", complete Section E. * | | ☑ Yes | ☐ No |
|---|---|---|---|

| 2. Attorney or Agent's last (family) name § | 3. First (given) name § | 4. Middle name(s) § |
|---|---|---|
| Whitley | Elizabeth | D. |

| 5. Address 1 § |
|---|
| 400 FRONT STREET |

| 6. Address 2 |
|---|
| P. O. BOX 507 |

| 7. City § | | 8. State § | 9. Postal code § |
|---|---|---|---|
| LOVINGSTON | | VA | 22949 |

| 10. Country § | 11. Province |
|---|---|
| UNITED STATES OF AMERICA | N/A |

| 12. Telephone number § | 13. Extension | 14. E-Mail address |
|---|---|---|
| 434-263-4300 | N/A | masH2A@maslabor.com |

| 15. Law firm/Business name § | 16. Law firm/Business FEIN § |
|---|---|
| MAS Labor H-2A | 204064282 |

| 17. State Bar number (only if attorney) § | 18. State of highest court where attorney is in good standing (only if attorney) § |
|---|---|
| N/A | N/A |

| 19. Name of the highest court where attorney is in good standing (only if attorney) § |
|---|
| N/A |

## F.  Job Offer Information

### a. Job Description

| 1. Job Title * |
|---|
| Farmworker |

| 2. Number of hours of work per week | | 3. Hourly Work Schedule * |
|---|---|---|
| Basic: * 45    Overtime: 0 | | A.M. (h:mm): 7 : 00    P.M. (h:mm): 3 : 30 |

| 4. Does this position supervise the work of other employees? * ☐ Yes ☑ No | 4a. If yes, number of employees worker will supervise (if applicable) § 0 |
|---|---|

5. Job duties – A description of the duties to be performed MUST begin in this space.  If necessary, add attachment to continue and complete description. *

This job requires a minimum of three months of prior agricultural employment experience, preferably on a vegetable farm. Workers will be expected to perform manual jobs as well as equipment operation with accuracy and efficiency beginning with planting through harvest. (Job duties continue on Attachment 1 to ETA Form 9142/ uploaded).

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

H-2A Application for Temporary Employment Certification
ETA Form 9142A
U.S. Department of Labor



**F. Job Offer Information** *(continued)*

**b. Minimum Job Requirements**

1. Education: minimum U.S. diploma/degree required *

☑ None ☐ High School/GED ☐ Associate's ☐ Bachelor's ☐ Master's ☐ Doctorate (PhD) ☐ Other degree (JD, MD, etc.)

| 1a. If "Other degree" in question 1, specify the diploma/ degree required § | 1b. Indicate the major(s) and/or field(s) of study required § (May list more than one related major and more than one field) |
|---|---|
| N/A | N/A |

| 2. Does the employer require a second U.S. diploma/degree? * | | Yes | ☑ No |
|---|---|---|---|

2a. If "Yes" in question 2, indicate the second U.S. diploma/degree and the major(s) and/or field(s) of study required §

N/A

| 3. Is training for the job opportunity required? * | | Yes | ☑ No |
|---|---|---|---|

| 3a. If "Yes" in question 3, specify the number of months of training required § | 3b. Indicate the field(s)/name(s) of training required § (May list more than one related field and more than one type) |
|---|---|
| 0 | N/A |

| 4. Is employment experience required? * | ☑ Yes | No |
|---|---|---|

| 4a. If "Yes" in question 4, specify the number of months of experience required § | 4b. Indicate the occupation required § |
|---|---|
| 3 | Farmworker |

5. Special Requirements – List specific skills, licenses/certifications, and requirements of the job opportunity. *

SEE ADDENDUM

Saturday work required. Must lift/bend/twist/carry up to 30 lbs. Post-hire employer-paid drug/alcohol testing and background check required. Workers need to have no

**c. Place of Employment Information**

| 1. Worksite address 1 * |
|---|
| 220 N. Fillmore Rd Coldwater, MI |

| 2. Address 2 |
|---|
| N/A |

| 3. City * | 4. County * |
|---|---|
| Coldwater | Branch |

| 5. State/District/Territory * | 6. Postal code * |
|---|---|
| MI | 49036 |

| 7. Will work be performed in multiple worksites within an area of intended employment or a location(s) other than the address listed above? * | ☐ Yes ☑ No |
|---|---|

7a. If Yes in question 7, identify the geographic place(s) of employment with as much specificity as possible. If necessary, submit an attachment to underline continue and complete a listing of all anticipated worksites. §

N/A

ETA Form 9142A             **FOR DEPARTMENT OF LABOR USE ONLY**

Case Number  H-300-15345-231422      Case Status  IN PROCESS      Validity Period.  N/A     to  N/A

OMB Approval 1205-0466
Expiration Date: 03/31/2016

H-2A Application for Temporary Employment Certification
ETA Form 9142A
U.S. Department of Labor



## G. Rate of Pay

**1. Basic Rate of Pay Offered \***

From: $ 11 . 56   To (Optional): $ 0 . 00

**1a. Overtime Rate of Pay** *(if applicable)* §

From: $ 0 . 00   To (Optional): $ 0 . 00

**2. Per:** (Choose only one) \*  ☑ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☐ Year ☐ Piece Rate

**2a. If Piece Rate is indicated in question 2, specify the wage offer requirements:** §
N/A

**3. Additional Wage Information** (e.g., multiple worksite applications, itinerant work, or other special procedures). If necessary, add attachment to <u>continue and complete</u> description. §

See Attachment 2 to ETA 9142 for Quality Standards and Piece Rates/Uploaded.

## H. Recruitment Information

**1. Name of State Workforce Agency (SWA) serving the area of intended employment \***
Branch County Michigan Works!

| 2. SWA job order identification number \* | 2a. Start date of SWA job order \* | 2b. End date of SWA job order \* (In H-2A this date is 50% of contract period) |
|---|---|---|
| 6410080 | 12/08/2015 | 05/31/2016 |

**3. Is there a Sunday edition of a newspaper (of general circulation) in the area of intended employment? \***   ☑ Yes   ☐ No

| Name of Newspaper/Publication *(in area of intended employment for H-2B only)* | Dates of Print Advertisement § | |
|---|---|---|
| 4. Battle Creek Enquirer | From: N/A | To: N/A |
| 5. N/A | From: N/A | To: N/A |

**6. Additional Recruitment Activities for H-2B program.** Use the space below to identify the type(s) or source(s) of recruitment, geographic location(s) of recruitment, <u>and</u> the date(s) on which recruitment was conducted. If necessary, add attachment to <u>continue and complete</u> description. \*

1) Contact all former workers who have satisfactorily completed previous season's employment.  2) Word of mouth/local inquiries.  3) Upon instruction from USDOL will place ads in designated newspapers and/or periodicals.

---

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

H-2A Application for Temporary Employment Certification
ETA Form 9142A
U.S. Department of Labor



## I. Declaration of Employer and Attorney/Agent

In accordance with Federal regulations, the employer must attest that it will abide by certain terms, assurances and obligations as a condition for receiving a temporary labor certification from the U.S. Department of Labor. Applications that fail to attach Appendix A or Appendix B will be considered incomplete and not accepted for processing by the ETA application processing center.

| | | | |
|---|---|---|---|
| 1. For H-2A Applications ONLY, please confirm that you have read and agree to all the applicable terms, assurances and obligations contained in **Appendix A**. § | ✓ Yes | No | N/A |
| 2. For H-2B Applications ONLY, please confirm that you have read and agree to all the applicable terms, assurances and obligations contained in **Appendix B**. § | Yes | No | N/A |

## J. Preparer

Complete this section if the preparer of this application is a person other than the one identified in either Section D (employer point of contact) or E (attorney or agent) of this application.

| 1. Last (family) name § | 2. First (given) name § | 3. Middle initial § |
|---|---|---|
| N/A | N/A | N/A |

| 4. Job Title § |
|---|
| N/A |

| 5. Firm/Business name § |
|---|
| N/A |

| 6. E-Mail address § |
|---|
| N/A |

## K. U.S. Government Agency Use (ONLY)

Pursuant to the provisions of Section 101 (a)(15)(H)(ii) of the Immigration and Nationality Act, as amended, I hereby certify that there are not sufficient U.S. workers available and the employment of the above will not adversely affect the wages and working conditions of workers in the U.S. similarly employed. By virtue of the signature below, the Department of Labor hereby acknowledges the following:

This certification is valid from _____ N/A _____ to _____ N/A _____.

_____
Department of Labor, Office of Foreign Labor Certification

N/A
_____
Determination Date (date signed)

N/A
_____
Case number

N/A
_____
Case Status

## L. Public Burden Statement (1205-0466)

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Public reporting burden for this collection of information is estimated to average 1 hour to complete the form and 20 minutes per response for all other H-2A information collection requirements, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this data collection is required to obtain/retain benefits (Immigration and Nationality Act, 8 U.S.C. 1101, et seq.). Please send comments regarding this burden estimate or any other aspect of this information collection to the Office of Foreign Labor Certification * U.S. Department of Labor * Room C4312 * 200 Constitution Ave., NW. * Washington, DC * 20210 or by email ETA.OFLC.Forms@dol.gov. Please **do not** send the completed application to this address.

ETA Form 9142A           FOR DEPARTMENT OF LABOR USE ONLY

Case Number: H-300-15345-231422      Case Status: IN PROCESS      Validity Period: N/A   to N/A

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

H-2A Application for Temporary Employment Certification
ETA Form 9142A
U.S. Department of Labor



---

ADDENDUM

ADDENDUM SECTION F.b.5: Special Requirements

fear of bees and be non-allergic to bee stings.

NOT AN OFFICIAL DOL LABOR CERTIFICATION DOCUMENT

---

ETA Form 9142A          **FOR DEPARTMENT OF LABOR USE ONLY**

Case Number: H-300-15346-231422          Case Status IN PROCESS          Validity Period. N/A          to N/A

OMB Approval. 1205-0466
Expiration Date. 03/31/2016

**H-2A Application for Temporary Employment Certification**

ETA Form 9142A – APPENDIX A

U.S. Department of Labor



**For Use in Filing Applications Under the H-2A Agricultural Program ONLY**

**A. Attorney or Agent Declaration**

*I hereby certify that I am an employee of, or hired by, the employer listed in Section C of the ETA Form 9142A, and that I have been designated by that employer to act on its behalf in connection with this application. If I am an agent and not an employee of the employer, then I have attached a Letter of Representation from the employer. I also certify that to the best of my knowledge the information contained herein is true and correct. I understand that to knowingly furnish false information in the preparation of this form and any supplement hereto or to aid, abet, or counsel another to do so is a felony punishable by a $250,000 fine or 5 years in a Federal penitentiary or both (18 U.S.C. 1001).*

| 1. Attorney or Agent's last (family) name | 2. First (given) name | 3. Middle Initial |
|---|---|---|
| Whitley | Elizabeth | D. |

| 4. Firm/Business name |
|---|
| MAS Labor H-2A, LLC |

| 5. E-Mail address |
|---|
| masH2A@maslabor.com |

| 6. Signature | 7. Date signed |
|---|---|
| | 12/11/2015 |

**B. Employer Declaration**

*By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment:*

1. The job opportunity is a full-time temporary position, the qualifications for which do not substantially deviate from the normal and accepted qualifications required by non-H-2A employers in the same or comparable occupations and crops.

2. The specific job opportunity for which the employer is requesting H-2A certification is not vacant because the former occupant(s) is (are) on strike or locked out in the course of a labor dispute involving a work stoppage.

3. The job opportunity is open to any qualified U.S. worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship, and the employer has conducted and will continue to conduct the required recruitment, in accordance with regulations, and has been unsuccessful in locating sufficient numbers of qualified U.S. applicants for the job opportunity for which certification is sought. Any U.S. workers who applied or apply for the job were or will be rejected only for lawful, job-related reasons, and the employer must retain records of all rejections as required by 20 CFR 655.167.

4. The job opportunity offers U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers and complies with the requirements at 20 CFR 655, Subpart B.

5. The employer understands that it must offer, recruit at, and pay a wage that is the highest of the adverse effect wage rate in effect at the time the job order is placed, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage, and, furthermore, that if a new Adverse Effect Wage Rate is published, or the employer is notified of a new prevailing wage rate during the contract period, and that new rate is higher than the wage determined by the NPC (except the CBA) during the application process the employer will increase the pay of all employees in the same job occupation to the higher rate.

6. There are no U.S. workers available in the area(s) capable of performing the temporary services or labor in the job opportunity, and the employer will conduct positive recruitment as specified by the NPC and continue to cooperate with the SWA by accepting referrals of all eligible U.S. workers who apply (or on whose behalf an application is made) for the job opportunity until completion of 50% of the contract period calculated from the first date of need indicated in Section B.5 of ETA Form 9142A.

7. All fees associated with processing the temporary labor certification will be paid in a timely manner

---

| ETA Form 9142A – Appendix A | **FOR DEPARTMENT OF LABOR USE ONLY** | Page A.1 of A 3 |
|---|---|---|

Case Number:_____ Case Status _____ Period of Employment _____ to _____

---

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

### H-2A Application for Temporary Employment Certification
### ETA Form 9142A – APPENDIX A
### U.S. Department of Labor



8. During the period of employment that is the subject of the labor certification application, the employer:
    (i) Will comply with applicable Federal, State and local employment-related laws and regulations, including health and safety laws;
    (ii) Will provide for or secure housing for workers who are not reasonably able to return to their permanent residence at the end of the work day that complies with the applicable local, State, or Federal standards and guidelines for housing without charge to the worker;
    (iii) Where required, has timely requested a preoccupancy inspection of the housing and received certification;
    (iv) Will provide insurance, without charge to the worker, under a State workers' compensation law or otherwise, that meets the requirements of 20 CFR 655.122(e).
    (v) Will provide transportation in compliance with all applicable Federal, State or local laws and regulations between the worker's living quarters (i.e., housing provided by the employer under 20 CFR 655.122(h)) and the employer's worksite without cost to the worker.

9. The employer has not laid off and will not lay off any similarly employed U.S. worker in the occupation that is the subject of the Application for Temporary Employment Certification in the area of intended employment except for lawful, job related reasons within 60 days of the date of need, or if the employer has laid off such workers, it has offered the job opportunity that is the subject of the application to those laid-off U.S. worker(s) and the U.S. worker(s) refused the job opportunity, was rejected for the job opportunity for lawful, job-related reasons, or was hired.

10. The employer and its agents have not sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor.

11. The employer has and will contractually forbid any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2A workers to seek or receive payments from prospective employees...

12. The employer has not and will not intimidate, threaten, restrain, coerce, blacklist, or in any manner discriminate against, and has not and will not cause any person to intimidate, threaten, restrain, coerce, blacklist, or in any manner discriminate against, any person who has with just cause:
    (i) Filed a complaint under or related to Sec. 218 of the INA (8 U.S.C. 1188), or any Department regulation promulgated under Sec. 218 of the INA;
    (ii) Instituted or caused to be instituted any proceeding under or related to Sec. 218 of the INA, or any Department regulation promulgated under Sec. 218 of the INA;
    (iii) Testified or is about to testify in any proceeding under or related to Sec. 218 of the INA or any Department regulation promulgated under Sec. 218 of the INA;
    (iv) Consulted with an employee of a legal assistance program or an attorney on matters related to Sec. 218 of the INA or any Department regulation promulgated under Sec. 218 of the INA; or
    (v) Exercised or asserted on behalf of himself/herself or others any right or protection afforded by Sec. 218 of the INA, or any Department regulation promulgated under Sec. 218 of the INA.

13. The employer has not and will not discharge any person because of that person's taking any action listed in paragraph 12(i) through (v) listed above.

14. The employer will inform H-2A workers of the requirement that they leave the U.S. at the end of the period certified by the Department or separation from the employer, whichever is earlier, as required under 20 CFR 655.135(i), unless the H-2A worker is being sponsored by another subsequent employer.

15. The employer has posted the Notice of Workers' Rights as required by 20 CFR 655.135(l) in a conspicuous place frequented by all employees.

16. If the application is being filed as an H-2A Labor Contractor the following additional attestations and obligations apply under 20 CFR 655.132:
    (i) The H-2A Labor Contractor has provided a copy of the MSPA Farm Labor Contractor (FLC) certificate of registration if required under MSPA, 1801 U.S.C. et seq., to have such a certificate identifying the specific farm labor contracting activities it is authorized to perform;
    (ii) The H-2A Labor Contractor has provided with this application a list of the names and locations of each fixed-site agricultural business to which the H-2A Labor Contractor expects to provide H-2A workers, the expected beginning and ending dates when the H-2A Labor Contractor will be providing the workers to each fixed site, a description of the crops and activities the workers are expected to perform at such fixed site, and copies of the fully-executed work contracts with each fixed-site agricultural business so identified;
    (iii) The H-2A Labor Contractor is able to provide proof of its ability to discharge financial obligations under the H-2A program and has secured a surety bond as required by 29 CFR 501.9, the original of which is attached and shows the name, address, phone number, and contact person for the surety, and provides the amount of the bond (as calculated pursuant to 29 CFR 501.9);

---

OMB Approval: 1205-0466
Expiration Date: 03/31/2016

## H-2A Application for Temporary Employment Certification

ETA Form 9142A – APPENDIX A
U.S. Department of Labor



(iv)   The H-2A Labor Contractor has engaged in and will engage in recruitment efforts in each area of intended employment in which it has listed a fixed-site agricultural business as required in 20 CFR 655.121, 655.150-155, and

(v)   The H-2A Labor Contractor has obtained from each fixed-site agricultural business that will provide housing or transportation to the workers a written statement stating that:

   a   All housing used by workers and owned operated or secured by the fixed-site agricultural business complies with the applicable housing standards in 20 CFR 655 122(d), and

   b   All transportation between the worksite and the workers' living quarters that is provided by the fixed-site agricultural business complies with all applicable Federal, State, or local laws and regulations and will provide, at a minimum, the same vehicle safety standards, driver licensure, and vehicle insurance as required under 29 U.S.C 1841 and 29 CFR part 500, except where workers' compensation is used to cover such transportation as described in § 655.122(e), and

   c   Attach to the statement certificates of occupancy from the SWA for all employer owned housing and copies of all drivers' licenses, vehicle registration, and insurance policies for all drivers and vehicles used to transport H-2A workers.

I hereby acknowledge that the agent or attorney identified in section E (if any) of the ETA Form 9142A and section A above is authorized to represent me for the purpose of labor certification and, by virtue of my signature in Block 5 below, I take full responsibility for the accuracy of any representations made by my agent or attorney

I declare under penalty of perjury that I have read and reviewed this application and that to the best of my knowledge the information contained therein is true and accurate *I understand that to knowingly furnish false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by a $250,000 fine or 5 years in the Federal penitentiary or both (18 U.S.C 1001)*

| 1. Last (family) name | 2. First (given) name | 3 Middle initial |
|---|---|---|
| Gill | Christopher | J. |

| 4. Title |
|---|
| Director of Greenhouse Operations |

| 5. Signature | 6. Date signed |
|---|---|
|  | 12 / 11 / 2015 |

## Public Burden Statement

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Public reporting burden for this collection of information is estimated to average 1 hour to complete the form and 20 minutes per response for all other H-2A information collection requirements, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this data collection is required to obtain/retain benefits (Immigration and Nationality Act, 8 U.S.C. 1101, et seq.) Please send comments regarding this burden estimate or any other aspect of this information collection to the Office of Foreign Labor Certification * U.S. Department of Labor * Room C4312 * 200 Constitution Ave , NW, * Washington, DC * 20210 or by email ETA.OFLC.Forms@dol.gov  Please **do not** send the completed application to this address.

| ETA Form 9142A - Appendix A | FOR DEPARTMENT OF LABOR USE ONLY | Page A 3 of A.3 |
|---|---|---|
| Case Number: _____ | Case Status: _____   Period of Employment _____ to _____ | |

Attachment 1 to ETA 9142 for Pepperco-USA Inc.

## Sec. F. Job Offer Information, Part A., Item 5 Job Duties, Continued:

Workers will be required to hang string which consists of tying twine to the crop wire using a machine that measures the length of string for you, tie/hang string/ twine to crop wire, hang string at required spacing while making sure that string/twine is at required length. To tie plants workers will need to tie string to the plant at proper tension and proper height below 1st split or 1st node. Twisting and pruning will consist of twisting the string around the stem and removing weaker shoots making sure to twist to the proper height and tightness, removing excessive shoots/growth on the plant, removing abnormal and side fruit; (flowers or fruit are not to be trapped) and replacing broken or missing heads while leaving the side shoot. Workers must twist all plants making sure none are forgotten or missed. Use flags and clips as required. Flag pruning will consist of pruning the side shoot on a leaf along with all the requirements for fruit pruning.

Fruit pruning requires taking off excess fruits and deformed fruits for proper fruit load, removal of fruit on side shoots, deformed, damaged or diseased fruit as instructed. Remove broken heads/plants.

Workers will harvest fruit according to color, grade, size and weight, identify any quality or disease issues, and make sure there is not any damage to fruit or containers. Workers will scout for bugs, implement and set IPM corrective action, and assist with growing pest and disease management activities.

For picking workers will be required to pick the correct ripeness ensuring fruit is not punctured, sliced or damaged. Workers must pick all fruit at harvest time making sure to not pick any broken or cut plants and removing all rotten fruit from plants. Fruit is not to be bruised due to careless handling or being thrown on the floor.

Workers will grade and sort according to company specifications in regards to size, color, appearance and quality to meet specific customer demands, discarding inferior or defective products and/or foreign matter. and Only acceptable products may be placed in packaging containers for further processing. Product will be placed in containers according to grade. Workers will measure, weigh and count products and materials, examine and inspect containers, materials and products to ensure that packing specifications are met; remove completed or defective products, placing them on conveyors or in specified areas such as allotted bins at loading docks. Additional duties may include loading materials and products into package processing equipment; stacking boxes on pallets; lifting boxes or crates as required; cleaning, sanitizing and disinfecting containers, materials, supplies or work areas using cleaning solutions and hand tools supplied by the company. Additional duties may be included and assigned as the needs arise. Will play an integral part in all food safety activities to maintain and meet SQF and USDA certifications.

Workers will be working under the direction of the Labor Manager, Head Grower, Crop Supervisor or an experienced Group Leader.

Workers will receive training on Pepperco-USA, Inc. policies with which they must comply including Equal Employment Opportunity policies, MIOSHA and Food and Health safety standards and guidelines, FMLA and worker's compensation leave policies and other standard operating procedures, around the time work commences.

Workers must attend an orientation session to review and train accordingly. Workers will be issued an identification badge and timekeeping wristband at no cost. Instructions on use and care of both will be provided in orientation. The employer retains ownership of the timekeeping wristband and ID badge. Both items must be returned to the employer upon termination of employment.

Employer is a drug and alcohol free workplace. While the employer does not require prospective applicants to take and pass a drug test prior to a hiring decision, the employer has a no-exceptions drug policy requiring newly-hired employees to take and pass an employer-paid drug test. Every new hire must undergo testing before starting work with the company. All testing is conducted uniformly after an initial job offer has been extended and accepted by the new hire. If an employee tests positive, he/she is immediately terminated and paid for all hours worked between the first date of employment and the date of termination, if any. In the case of a non-local or foreign worker who is terminated for failure to pass a drug test, the employer will arrange least-cost transportation to the worker's place of recruitment, at the worker's expense. The employer will also drug/alcohol test at random, upon reasonable suspicion of use, and after a worker has an accident at work.

The employer requires that all newly hired employees take and pass an employer-paid background check. All background checks are conducted uniformly after an initial job offer has been extended to and accepted by the new hire. Applicants found to have felony convictions (including, but not limited to assault, child molestation, sex or drug-related convictions) will be immediately terminated out of concern for general public safety, and paid for all hours worked between the first date of employment and the date of termination. In the case of a foreign worker who is terminated for cause resulting from findings of the background check, the employer will arrange least-cost transportation to the worker's place of recruitment, at the worker's expense.

Workers should be able to work on their feet in bent positions for long periods of time. Work requires repetitive movements and extensive walking. Work in high humidity in temperatures which range between 70 and 80 degrees. Work with background noise of up to 70 decibels. Must be able to hear and see moving equipment for one's own safety as well as to hear announcements (in case of emergency) as well as buzzer indicating lunch and breaks. Requires good manual dexterity. Workers should be physically able to do the work required with or without reasonable accommodations. Lift, bend, twist and carry up to 30 lbs. Workers need to have no fear of bees and be non-allergic to bee stings. Saturday work required.

Operational specifications can and will change during the season due to crop market conditions. Workers will be expected to conform to the specific instructions provided for each day's work schedule. Instructions and general supervision will be provided by the General Manager, Pack House Manager, Head Grower, Labor Manager, Crop Supervisors or any other designated personnel assigned to lead work groups. Daily individual work assignments, crew assignments and location of work will be handled via your area assigned Labor Manager/Head Grower/Supervisor/Lead personnel as they assess their crop and operational needs. Workers may be assigned to varying work duties throughout the day. The Work Rules of conduct/discipline attached to this clearance order are the expected standards under this job order.

The training period for the worker to acclimate to the greenhouse environment, physical demands of the crop work activities, and familiarize themselves with the job specifications is three weeks or 18 working days. Within these three weeks, the worker will demonstrate proper harvest methods in the following manner:

Week 1: the worker must reach the minimum work requirements by 50%
Week 2: the worker must reach the minimum work requirements by 75%; and
Week 3: the worker must reach the minimum work requirements by 100%.

After the three (3) week training period, the worker must continue to maintain the minimum quality and production requirements and slowly increase their work speed as they are more comfortable with the job task and understand the entire task.

Employer assures that workers will be provided transportation from living quarters to work site every day (for workers who must be provided housing under the applicable regulations).

Persons seeking employment as experienced farm worker must be available for the entire period requested by the employer. Applicants must be able to furnish verbal or written statement establishing relevant prior work experience. Successful applicants will be subject to a trial period of up to 18 days during which their performance of required tasks will be evaluated. If the performance during the trial period is not acceptable to the employer the worker's employment will be terminated.

Raises and/or bonuses may be offered to any seasonal worker employed pursuant to this job order, at the company's sole discretion, based on individual factors including work performance, skill, and tenure.

Employer retains the right to discharge an obviously unqualified worker, malingerer or recalcitrant worker who is physically able but does not demonstrate the willingness to perform the work necessary for the employer to grow a premium quality product, or for any other lawful reason.

All terms and conditions included in the job order will apply equally to all workers, both U.S. workers and H-2A workers, employed in the occupation described in this clearance order.

Attachment 2 to ETA 9142 for Pepperco-USA Inc.

### Sec. G. Rate of Pay, Item 2a. Piece Rate, Continued:

All work is compensated at the above hourly rate except for the following work activities which may be compensated on a piece rate productivity incentive basis according to the following schedule:

See attached Quality Standards and Piece Rates Attachment.

No piece rate work will be performed at less than the stated piece rates. When work is performed according to the stated piece rate schedule, workers are guaranteed that they will be paid no less than the stated AEWR hourly rate for each hour worked. In instances when working or crop conditions indicate, the employer may, at his discretion, suspend the piece rate scheme in favor of hourly pay at the stated AEWR hourly rate in order to assure workers fair earnings.

Pepperl

| No. | Name of Activity | Hourly Wage | Job Description/Quality | Piece Rates |
|---|---|---|---|---|
| 504 | Harvest/Pruning | ALWR Rate | Attend meeting/training before or during shift | |
| 111 | Orientation | ALWR Rate | Initial training and new hire process. | |
| **Main Group: Cleaning & Tent Out** | | | | |
| 503 | Leaf Blowing - Clean Debris | ALWR Rate | Use leaf blower to blow debris to end of row | |
| 502 | Misc. Cleanup | ALWR Rate | Various cleaning activities in the facility | |
| 501 | Floors - Cleaned | ALWR Rate | Sweeping rows/floors with a broom | |
| 503 | Greenhouse/Round Town | ALWR Rate | Roller cart types in greenhouse | |
| 504 | Rolling Carts | ALWR Rate | | |
| 505 | Cutting Vines | ALWR Rate | Cut vines in preparation for shredding | |
| 506 | Placing Plant on Tarps | ALWR Rate | Placing vines on the activity of shredding | |
| 507 | Shredding Plants | ALWR Rate | Shredding plants with machine | |
| 508 | Remove Drip | ALWR Rate | Remove growing table from plants/floors | |
| 509 | Remove Dripper Apparatus | ALWR Rate | Remove dripper apparatus from slab | |
| 510 | Check CO2 | ALWR Rate | Check $CO_2$ equipment | |
| 511 | Harvest Cart Handling | ALWR Rate | Adjusting the setting on the harvest carts and staging them for production. | |
| 512 | Harvest Equipment | ALWR Rate | Cleaning and unpacking with harvest equipment | |
| 513 | Cutting Stirs (bottoms) | ALWR Rate | Cutting the sizing attached to the bottom of the plant | |
| 515 | Raising Droppers | ALWR Rate | Raising and raising droppers | |
| **Main Group: Crop Work** | | | | |
| 101 | Crop Registration | ALWR Rate | Tag plants and take measurements and counts | |
| 102 | Pepper/Fruit Pruning | ALWR Rate | Fruit pruning consists of removing fruit to gain the maximum in yield on the plant. Blemished, misshaped, rotted, and undersized fruit is removed. | Minimum Performance Standard of 2620 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 2620 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0410 per plant above the minimum. |
| 103 | Misc. Crop Work | ALWR Rate | Various crop work not categorized in this list | Minimum Performance Standard of 100 [?] plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 100 [?] plants per hour. The additional incentive rate for exceeding the minimum will be $0.005x per plant above the minimum. |
| 105 | Shoot Pruning | ALWR Rate | Shoots or suckers are removed, trimmed, or broken off to make room as needed for plant growth. Leaves are left on the shoots to help shade the fruits. | Minimum Performance Standard of 305 [?] plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 305 [?] plants per hour. The additional incentive rate for exceeding the minimum will be $0.0054 per plant above the minimum. |
| 106 | Topping (Head Removal) | ALWR Rate | This is all heads to stop growth at end of crop | |
| 107 | Twist and Prune | ALWR Rate | Twisting the plant around the crop string. The Pruning part can consist of removing shoots or fruits as describe to the "Twist Prune" or "Shoot Prune" job tasks. Shoots or suckers are removed, trimmed, or broken off to make room as needed for plant growth. Leaves are left on the shoots to help shade the fruits. Fruit pruning consists of removing fruit to gain the maximum yield on the plant. Blemished, misshaped, rotted, and undersized fruit is removed. | Maximum Performance Standard of 720 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 720 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0116 per plant above the minimum. |
| 108 | Twisting | ALWR Rate | Twisting the plant around the crop string. <br> - Twists to the proper height and tightness <br> - Flowers or fruit are not to be topped <br> - No broken plants, Remove broken heads/plants <br> - Twist all plants, no forgotten or missed plants (double check) <br> - Remove abnormal and side fruit | Minimum Performance Standard of 1638 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 1638 plants per hour. The additional incentive rate for exceeding the minimum will be $0.006 per plant above the minimum. |

| No. | Name of Activity | Hourly Wage | Job Description/Quality | Piece Rates |
|---|---|---|---|---|
| 109 | House? | | | |
| 110 | Clipping | ALWR Rate | Asking a special break to support the fruit load to the string / Clipping is using a clip to attach the plant to the crop string / Clips must be placed on proper position / Cleanest result should be trapped / No broken plants / Clips placed on all plants / none related of forgotten/Double Check | Minimum Performance Standard of 3800 plants per hour. Minimum Performance Standard of 1616 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 1616 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0027 per plant above the minimum. |
| 111 | Clip and Prune | ALWR Rate | Clipping the plant to the crop string / The Pruning part can consist of removing shoots or fruits as described in the "First Prune" or "Shoot prune" job task. Leaves or suckers are removed, trimmed, or broken off to make room on the plant growth. Leaves are left on the shoots to help shade the fruits. Fruit ease removal as if removing fruit to gain the maximum yield on the plant. Blemished, mishaped, rotten, and unsized fruit is removed. | Minimum Performance Standard of 720 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 600 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0416 per plant above the minimum. |
| 112 | Prepare First Prune | ALWR Rate | First pruning consists of removing all fruit in the first fork of the plant to gain the maximum yield on the plant / Prune of side shoots that become the 2 main shoots / First time removal of excessive shoots, to leave the 2 strongest shoots / No broken plants, remove broken leaves/plants / Use flags where missing plants/heads | Minimum Performance Standard of 765 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 600 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0125 per plant above the minimum. |
| 114 | First Twist | ALWR Rate | First Twist is to twist the plant to the crop string with the objective of training the plant to grow properly / First time at the beginning of the crop twisting the string around the stem / First time twist, twist to proper height and plant / Do not twist too tight or harm the plant / Twist all plants, no forgotten or missed plants (double check) / Use flags and clips as required | Minimum Performance Standard of 522.5 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 600 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0176 per plant above the minimum. |
| 115 | Flag Pruning | ALWR Rate | Flag pruning is removing lower leaves that is needed for shading the peppers / Prune side shoot on a leaf should be 1, 2 or 3 leafs that are left on side shoot / Removal of excessive side shoot growth on the plants / Replace broken or missing leaf (flare side down) / No broken or missing heads, remove broken plants/heads / Prune on required leaf | Minimum Performance Standard of 2320 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 2320 plants per hour. The additional incentive rate for exceeding the minimum will be $0.0029 per plant above the minimum. |
| | Main Group: T Facilities | | | |
| 700 | Operate People's Harvest | ALWR Rate | Drive vehicle to transport workers within the facility | |
| 710 | Sanitation | ALWR Rate | Clean and sanitize restrooms and facilities | |
| | Main Group: IPM Support | | | |
| 401 | IPM Scouting | ALWR Rate | Look for pests in the crops at facility | |
| 420 | Stick Traps | ALWR Rate | Place sticky traps in IPM from time to time | |
| 430 | IPM Misc. | ALWR Rate | Other duties that arise in IPM from time to time | |
| 440 | IPM Treatment | ALWR Rate | Flagging, spraying, or treating plants for pests and disease | |
| | Main Group: Pack House/Harvest Area | | | |
| 800 | Value Added • Proper Bagging | ALWR Rate | Put peppers into poly bag / Correct Color packed as instructed / Correct grade and as instructed / Correct weights per pack / No damage to containers / No damage to fruit (no punctures no soft fruit, no damage) / Correct size required as per pack and as instructed / Identifying quality and defected leaves / Ensuring proper bag labeling / Adherence to all food safety regulations | |
| 801 | Box Making | ALWR Rate | Make boxes for packing | |
| 802 | Clean Pack Line | ALWR Rate | Perform various cleaning activities in the pack house / Ensuring adherence to all food safety regulations | |

| No. | Name of Activity | Hourly Wage | Job Description/Quality | Piece Rates |
|---|---|---|---|---|
| 825 | Pack Orange | ALWR Rate | Pull/Grade oranges prepare for shipment; Correct Color packed as instructed; Correct grade out as instructed; Correct weights per pack; No damage to containers; No damage to fruit (no punctures no soft fruit, no damage); Correct size required as per pack and as instructed; Identifying quality and disease issues; Ensuring correct Labeling; Adherence to all food safety regulations | |
| 826 | Pack Red | ALWR Rate | Pull/Grade red prepare for shipment - Correct Color packed as instructed; Correct grade out as instructed; Correct weights per pack; No damage to containers; No damage to fruit (no punctures no soft fruit, no damage); Correct size required as per pack and as instructed; Identifying quality and disease issues; Ensuring correct Labeling; Adherence to all food safety regulations | |
| 827 | Pack Yellow | ALWR Rate | Pull/Grade yellow prepare for shipment - Correct Color packed as instructed; Correct grade out as instructed; Correct weights per pack; No damage to containers; No damage to fruit (no punctures no soft fruit, no damage); Correct size required as per pack and as instructed; Identifying quality and disease issues; Ensuring correct Labeling; Adherence to all food safety regulations | |
| 828 | Stack Boxes | ALWR Rate | Stack boxes of product on pallet | |
| 829 | Equipment Operator | ALWR Rate | Operate various equipment in the pack house | |
| 897 | Pack House Misc | ALWR Rate | Perform other functions in the pack house as required | |
| 300 | Packing - Start of harvest - June | ALWR Rate | Harvesting peppers from plants when they are ripe. Pepper production is graded at the start of the season. Correct color (level of ripeing); Correct grade out as instructed | Minimum Performance Standard of 193 kilos per hour; In addition to the hourly rate (which is applicable providing it rains), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 200 kilos per hour. The additional incentive rate for exceeding the minimum will be $0.0548 per kilogram above the minimum. |
| 300 | Packing - Start of July - end of harvest | ALWR Rate | Harvesting peppers from plants when they are ripe. Adjustment to take into account the lower production at the end of the season. Correct color (level of ripeing); Correct grade out as instructed | Minimum Performance Standard of 141 kilos per hour; In addition to the hourly rate (which is applicable providing it rains), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 150 kilos per hour. The additional incentive rate for exceeding the minimum will be $0.0728 per kilogram above the minimum. *NOTE*: The difference for month ranges is due to the difference in production during those months to partly if required workers and not to provide them there for potential lower production |
| 204 | Hanging Strings | ALWR Rate | Hanging strings is tying over crop strings to the crop wire to support plants. Tie twine to the crop wire into a stringer, a machine that measures the length of a string for you. Tie/hang string/twine to the crop wire. Hand tieing at required spacing. Make sure that string/twine is at required length (double check) | |
| 201 | Straighten Strings | ALWR Rate | Separate and straighten strings | |
| 201 | Install Clippers | ALWR Rate | Place clippers into stalks or cobs as directed | |
| 201 | Install Stals | ALWR Rate | Place tubs onto tubs as directed | |
| 201 | Planting | ALWR Rate | Place new plants onto tubs as directed | |
| | Main Grower Planting | ALWR Rate | | |

| No. | Name of Activity | Hourly Wage | Job Description/Quality | Piece Rates |
|---|---|---|---|---|
| 205 | Cutting Stabs | ALWA Rate | Create drain holes in tube | |
| 206 | Tie Plants | ALWA Rate | Tie plants to tie the crop string at the bottom the plant. Tie along tie the plant, there will be 2 strings tied to one plant as well as 2 shots for main stems. Tie along at proper height below 1st light or 1st node. Tie string at proper tension. No broken plants | • Minimum Performance Standard of 194 plants per hour; In addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve a piece rate bonus, the minimum requirement for this activity is 475 plants per hour. • The additional incentive rate for exceeding the minimum will be 0.0759 per plant above the minimum. |
| 209 | Stick | ALWA Rate | Remove sticks that came with the starter plants. First clipping is to add on sticks clip to the string at the bottom of the plant. Clips must be placed in proper position Sticks must not be trapped No broken plants | • Minimum Performance Standard of 394 plants per hour; in addition to the hourly rate (which is applicable prevailing rate), employees will have the opportunity for an additional incentive rate as follows: To achieve the piece rate bonus, the minimum requirement for this activity is 475 plants per hour. • The additional incentive rate for exceeding the minimum will be 0.0333 per plant above the minimum. |
| 210 | First Clip | ALWA Rate | Clips placed on all plants - note instead of forgotten/Double Check | |

All interpreted Pest Management, Food Safety Activities and misc. tasks must be completed to ensure adherence to SOP rules and regulations for the facility to meet/exceed all legally binding requirements. Activities include tasks and outside work at the facility.



U.S. Department of Labor
Employment and Training Administration
Office of Foreign Labor Certification
Chicago National Processing Center
11 West Quincy Court
Chicago, IL 60604-2105

RE:  Pepperco-USA Inc.

To Whom It May Concern:

In accordance with 20 CFR § 655.122(e)(1) and 20 CFR § 655.122(e)(2), I attest that Pepperco-USA Inc.'s
Workers' Compensation Insurance policy will be renewed to cover the entire contract period specified on my
H-2A application; to-wit: 2/1/16  A copy of my current certificate is enclosed herein.
11/30/16

Sincerely,

Christopher J. Gill
Director of Greenhouse Operations
Pepperco-USA Inc.

Enclosures

 

MAROFAR-01    VBALL

## CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 12/10/2015

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER License # 0019304-1
Hub International Midwest East
625 Kenmoor Ave SE
Suite 200
Grand Rapids, MI 49546

CONTACT NAME:
PHONE (A/C, No, Ext): (616) 233-4111
FAX (A/C, No): (616) 233-4110
E-MAIL ADDRESS:

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Accident Fund Insurance Company of America | 10166 |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |
| INSURER F: | |

INSURED
Pepperco USA LLC
220-270 N Fillmore Rd
Coldwater, MI 49036

COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR ☐ | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | POLICY ☐ PRO-JECT ☐ LOC ☐ | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ☐ NON-OWNED AUTOS ☐ | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR ☐ | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE ☐ | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | | WCV6095990 | 12/01/2015 | 12/01/2016 | X PER STATUTE ☐ OTH-ER ☐ | |
| | | | | | | | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

CERTIFICATE HOLDER

For Information Only

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)    The ACORD name and logo are registered marks of ACORD

| U.S. Department of Labor<br>Wage and Hour Division | Amended: 01/08/2014 | | Social Security Account No. | |
|---|---|---|---|---|
| | | | Social Security Employer ID No. | 20-4064282 |
| **Farm Labor Contractor Certificate of Registration**<br>No.   C-03-064282-A-16-R<br>Expires  01/31/2016 | | | Perm. Home Address   650 Front Street | |
| | | | Lovingston | VA   22949 |
| Name   MAS Labor H-2A | | | (City or Town) | (State)   (ZIP Code) |

I certify that the person named above is registered pursuant to the Migrant and Seasonal Agricultural Worker Protection Act and is authorized to perform the following activities covered by the Act: Recruit, solicit, furnish, hire and employ.

| | | | |
|---|---|---|---|
| Transportation | Authorized | x | Not Authorized |
| Housing | Authorized | x | Not Authorized |
| Driving | Authorized | x | Not Authorized |

Approved   Sherlyn Simon                                Date:  02/01/2014

(National Certification Program Manager)        WH-511 (6/96)
192068

Date of Birth   05/02/1953        Height    5'6"      Weight    125

(Month)  (Day)  (Year)

This Certificate is based on the Migrant and Seasonal Agricultural Worker Protection Act and regulation issued thereunder, and on my application for registration. It may be revoked or suspended, its renewal denied, for noncompliance with the Act or regulation, including applicable requirements for transporting and housing migrant workers. Such noncompliance may a constitute a criminal offense.

1-9-2014

(Signature of Holder)                          (Title)



MAS Labor H2A, LLC
400 Front Street
P.O. Box 507
Lovingston, VA 22949
434.263.4300 (phone)
434.263.4700 (fax)
www.maslabor.com (Web site)
solutions@maslabor.com (email)

© 2015 (revised 7/28/2015, printed 12 06 PM 11/3/2015)

**2015-16 H-2A Document 4**

### AGENCY & INDEMNITY AGREEMENT

THIS AGENCY AND INDEMNITY AGREEMENT (the "Agreement") is entered into by and between MAS LABOR H2A, LLC ("másH2A"), a Virginia limited liability company, and

**Pepperco-USA Inc**

("Client"),
an employer having its principal place of business in the state of **Michigan**

WHEREAS másH2A provides professional services intended to assist employers in obtaining capable, reliable, legal seasonal or temporary labor;

WHEREAS Client needs such services as másH2A provides;

WHEREAS Client has agreed to retain másH2A's services and másH2A has agreed to provide its services for the purposes and upon the terms and conditions herein set out.

NOW, THEREFORE, in consideration of the mutual promises and premises herein contained and other good and valuable consideration, the adequacy of which is hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

INDEPENDENCE: Client and másH2A each understand and agree that it is independently engaged in the operation of its own business, that neither shall be considered to be the agent, master or servant of the other for any purpose except as set forth in this Agreement, and that neither has any general authority to enter into any contract, assume any obligations or to otherwise make any warranties or representations on behalf of the other, except as otherwise expressly provided herein. It is the intention of Client and másH2A in accomplishing the results undertaken by másH2A that másH2A be an independent contractor and this agreement shall be construed in light of this intention. In no event shall másH2A be deemed to be an employer of any workers obtained by or for Client. Furthermore, while másH2A may assist Client in placing help wanted ads and other recruiting activities, másH2A will not make hiring decision on behalf of client. Hiring decisions are the exclusive right and responsibility of client.

AGENCY: Client agrees to hire másH2A and másH2A consents to be hired by Client to provide services to Client as set forth in in "2015-16 H-2A Document 2", the "Service and Fee Schedule" signed by Client and incorporated herein by reference. Client hereby irrevocably makes, constitutes and appoints másH2A as its lawful agent to

perform, carry out or confirm on Client's behalf all such acts, deeds, and services as may be necessary to accomplish the foregoing. As required by 20 C.F.R. § 655.135(k), Client hereby forbids másH2A and any of its agents to seek or receive payments or other compensation from prospective H-2A employees.

TERM: This Agreement shall commence upon its execution by both másH2A and Client and shall apply to arrangements made for the workers to perform work during a single period of need following the execution of this agreement.

COMPENSATION TO másH2A: másH2A shall be compensated by Client for its services hereunder as set forth in "2015-16 H-2A Document 2", the "Service and Fee Schedule" signed by Client.

DUTIES: Client agrees to comply in a timely manner with all requests made by másH2A as reasonably necessary for the provision of its services to Client hereunder. Further, Client agrees that any and all information furnished to másH2A will be truthful. Further, Client agrees to familiarize itself with the terms and conditions of employment stated by másH2A on Client's behalf in its labor certification application and in its written disclosure to prospective workers and to comply with those terms and conditions. Further, Client agrees to familiarize itself with all obligations imposed on it as an employer of U.S. and/or foreign labor under any and all applicable state and federal law and regulations and with such reasonable policies as másH2A may require and to comply with those obligations and policies.

REPRESENTATIONS: Client and másH2A each represents and warrants that it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and that this Agreement constitutes a valid and legally binding obligation, enforceable in accordance with its terms and conditions. Client and másH2A each further represents and warrants that neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, charge or other restriction of any government, governmental agency or court to which it is subject.

INDEMNITY: To the fullest extent permitted by law, Client expressly agrees to defend (at the Client's expense and with counsel retained by or agreed to by másH2A for such purpose in másH2A's sole discretion), indemnify, and hold harmless másH2A, its affiliates, and their respective officers, members, partners, directors, managers, shareholders, owners, employees, agents, successors, assigns and their respective clients from and against any and all claims, losses, damages, liabilities, fines, penalties and expenses of any kind whatsoever, including without limitation arbitration or court costs and attorneys' fees, such legal expenses to include costs incurred in enforcing or effectuating the obligations agreed to in this Section, arising on account of or in connection with any claims, demands, causes of action, suits, investigations, audits, or proceedings (made, filed or threatened) against the Client or másH2A by any person or entity not a party to this Agreement and which relate to, or arise out of or in connection with másH2A's services provided hereunder (including without limitation any claim that másH2A was acting as a joint

1

employer with Client or any claim of any violation or alleged violation of any law or other authority related to Client's use of labor provided pursuant to másH2A's efforts). If Client receives notice of an assertion of any such claim, loss, damage, liability, fine, penalty, or expense, Client agrees that it will immediately notify másH2A of such assertion.

Client also hereby expressly agrees to defend (at the Client's expense and with counsel retained by or agreed to by másH2A for such purpose in its sole discretion), indemnify and hold másH2A, its affiliates, and their respective officers, members, partners, directors, managers, shareholders, owners, employees, agents, successors, assigns and other clients, harmless from and against any and all claims, damages, liability or losses, fines, penalties and expenses of any kind, including attorneys' fees and, arising or resulting from Client's breach of any of its representations, warranties, covenants and agreements contained in this Agreement.

SURVIVAL OF OBLIGATIONS: Client and másH2A each understand and agree that this Agreement shall be valid for, and legally binding on, its respective successors and assigns. Client and másH2A agree that obligations pursuant to paragraphs titled "COMPENSATION TO másH2A", "DUTIES", "REPRESENTATIONS" and "INDEMNITY" above shall survive the expiration of this Agreement.

GOVERNING LAW AND JURISDICTION: This agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to its choice of law rules. Jurisdiction and venue for resolution of all disputes and claims under or related to this Agreement or any other agreement between the Client and másH2A shall rest exclusively and solely in the Circuit or General District Courts for the County of Nelson, Virginia or the United States District Court for the Western District of Virginia, Lynchburg Division, and Client and másH2A agree to take such actions as may be necessary to carry out the terms of this provision.

PRONOUNS AND PLURALS: All pronouns and variations thereof shall deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the person or persons, entity or entities, may require.

ENTIRE AGREEMENT: This Agreement contains all the terms and conditions agreed upon by the parties and no other agreements, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or bind either of the parties.

BINDING EFFECT: This Agreement shall be binding on the parties and their respective heirs, successors, and assigns, except that Client may not assign its duties hereunder without másH2A's express written permission.

AMENDMENT AND WAIVER: No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by both of the parties hereto. No waiver by másH2A of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

SEVERABILITY: Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or jurisdiction.

IN WITNESS WHEREOF, the parties have signed this Agreement this

20 day of OCTOBER , 2015

MAS LABOR H2A, LLC ("másH2A")

By: _Libby DeShiell_

President

CLIENT

_PEPPELCO — USA   INC_

Printed Name: _CHRESTOPHER   J.   GELL_

Signature: _[signature]_

Title: _DIRECTOR   OF   GREENHOUSE_
       _OPERATIONS_

2